FILED'06 APR 28 14:35USDC-ORE

IN THE UNTIED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTINE L. BROWN,

          Plaintiff

    v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

          Defendant

_____

Civil No. 05-0344-AA

OPINION AND
ORDER

MAX RAE
P.O. Box 7790
Salem, OR 97303
      Attorney for plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

L. Jamala Edwards
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075
      Attorneys for defendant

AIKEN, Judge:

Plaintiff Christine L. Brown seeks judicial review of the Social Security Commissioner's final decision denying her application for disability insurance benefits (DIB) and supplemental social security income (SSI) benefits under Titles II and XVI of the Social Security Act (the Act). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Social Security Commissioner's decision is reversed and the case remanded for benefits.

## BACKGROUND

On June 20, 2001, plaintiff applied for DIB and SSI, alleging disability as of July 16, 1997. Tr. 76, 669. After plaintiff's applications were denied initially and on reconsideration, plaintiff timely requested a hearing before an administrative law judge (ALJ). Tr. 33-36, 672-680. On October 27, 2003, plaintiff, her ex-boyfriend, and a vocational expert appeared and testified before the ALJ. Tr. 694-735. On April 22, 2004, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 19-31. On February 18, 2005, the Appeals Council denied review, rendering the ALJ's decision the final agency decision. Tr. 7-10. Plaintiff now seeks judicial review.

Born in 1954, plaintiff completed high school and two years of community college education. Tr. 73, 89, 134. Plaintiff has past relevant work as a dry cleaner assistant, waitress, gas station attendant, housekeeper, telephone solicitor, rental consultant manager, and receptionist. Tr. 89, 115. Between 1985 and 1998, plaintiff injured her wrists, knees, and back, resulting in successive surgeries on each. Tr. 262, 326, 339, 364, 404-06, 410-12, 448, 465. Plaintiff also alleges right hip pain, headaches and severe allergies. Tr. 128. Plaintiff contends she has been unable to work due to these impairments since July 16, 1997, because she cannot stand or walk for more than a short period, cannot use her hands, and tires easily because of pain. Tr. 669.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). For purposes of DIB, plaintiff's last insured date is June 30, 2002. Therefore, to be eligible for DIB, plaintiff must establish disability as of that date.

The Commissioner has established a sequential process of up to five steps for determining whether a person is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that plaintiff had not engaged in "substantial gainful activity" during the period of alleged disability. Tr. 23; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the ALJ found that plaintiff has medically determinable, severe impairments. Tr. 24; 20 C.F.R. §§ 404.1520(c), 416.920(c). Specifically, the ALJ found plaintiff's ability to work limited by her degenerative disc disease, post-laminectomy status, right knee chondromalacia, asthma, and depressive disorder. However, at step three, the ALJ found that plaintiff's impairments did not meet or equal the requirements of a listed impairment. Tr. 24; 20 C.F.R. §§ 404.1520(d), 416.920(d). Thus, the inquiry proceeded to step four.

At step four, the ALJ must evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity (RFC) to determine whether the claimant can perform relevant past work. The claimant's RFC is an assessment of work-related activities the claimant may still

perform on a regular and continuing basis, despite limitations imposed by her impairments. 20

C.F.R. §§ 404.1520(e); 404.1545(a); 416.920(e); 416.945(a); Social Security Ruling (SSR) 96-8p.

With respect to plaintiff's RFC, the ALJ found:

> The evidence in the record as a whole indicates that the claimant has retained the residual functional capacity to lift and carry up to 20 pounds on occasion and frequently up to 10 pounds. She needs an option to alternate sitting and standing every hour. She can occasionally climb ramps and stairs, but not ladders, ropes, and scaffolds. She can occasionally stoop, kneel, and crouch. She should avoid concentrated exposure to fumes, odors, dusts, and other inhalants. She can perform frequent but not constant gross manipulation. She can perform simple 1-2-3 step tasks. She should have only casual co-worker contact and no direct public contact.

Tr. 29. Based on her RFC, the ALJ found that plaintiff could not perform her past relevant work,

and the inquiry proceeded to step five. Tr. 29.

At step five, the burden shifts to the Commissioner to demonstrate that there are a significant

number of jobs in the national economy that the claimant can do, given the claimant's RFC, age,

education, and work experience. *Yuckert*, 482 U.S. at 141-142; *Tackett v. Apfel*, 180 F.3d 1094,

1098-89 (9th Cir. 1999); 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2). If the Commissioner meets this

burden, the claimant is not disabled. 20 CFR §§ 404.1566, 416.966. Relying on the testimony of

the vocational expert (VE), the ALJ identified two examples of work plaintiff could perform: clerical

sorting and tray setter. Tr. 30. Accordingly, the ALJ determined that plaintiff was not disabled

under the Act at any time through the date of his decision. Tr. 31

Plaintiff challenges the ALJ's evaluation of the evidence in determining her RFC and her

ability to perform other work at steps four and five of the sequential process.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied

proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C.

§ 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  This court

must weigh "both the evidence that supports and detracts from the Commissioner's conclusion."

*Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d. 771,

772 (9th Cir. 1986)).   The reviewing court "may not substitute its judgement for that of the

Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations

of the evidence are insignificant if the Commissioner's interpretation is a rational reading.

*Magallanes*, 881 F.2d at 750; *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Plaintiff contends that the ALJ failed to reach an accurate RFC assessment because he

improperly assessed her credibility, improperly assessed the medical evidence and improperly

discredited lay witness testimony.

## A.  Medical Background

In 1986, plaintiff reportedly had arthroscopic surgery on her right knee, following a medial

meniscus tear.  Tr. 33, 400.  In 1997, plaintiff reported that her knee pain returned after twisting it;

imaging studies showed mild narrowing of patellofemoral and medial tibiofemoral compartments

but no significant abnormalities.  Tr. 471-72.  In August 1998, plaintiff reported that her right leg

went numb, causing her right knee to "give out" while she was standing in her kitchen. Tr. 236, 439.

She subsequently could not complete a shift at her restaurant job and reported continued knee pain

in the autumn of 1998.   Tr. 395, 400, 439.   Her physician prescribed physical therapy and a knee

brace.  Tr. 423.  Nerve conduction studies revealed carpal tunnel syndrome, and plaintiff had

surgeries on both wrists in 1998. Tr. 403-418. In March 2000, plaintiff reported returning carpal tunnel symptoms. Tr. 364.

In 1998, plaintiff injured her back falling out of a barn and landing upon a pipe projecting out of an overturned bathtub. Tr. 378, 381, 397. In 1999, after experiencing continued pain, plaintiff began physical therapy which exacerbated her injury. Tr. 386. Subsequent imaging studies showed degenerative disc disease in her lumbar spine, nerve bulging and other anatomic changes. Tr. 352, 371-72, 460, 462, 467. In September 1999, plaintiff's treating physicians referred her for spinal surgery. Tr. 371. In October 1999, surgeons performed a laminectomy and foraminotomy, removing a lumbar disc. Tr. 465. Initial surgical result was positive, and plaintiff apparently functioned well after her laminectomy. Tr. 293-312, 366.

Imaging studies conducted in 2000 and 2001 showed nerve impingement on the right lumbar spine, which was likely affecting a nerve root as well as advanced degenerative disc disease. Tr. 235, 345, 461. A separate study showed mild degenerative joint disease of the right hip. Tr. 462. In 2001, plaintiff reported returning pain, which was first treated with epidural nerve blocks. Tr. 340. When this did not provide relief, plaintiff's physicians began monitored opioid therapy. This effort continued between August 2001 and March 2002. Tr. 293-341.

**B. Plaintiff's Credibility**

Plaintiff testified that in her previous job as a short order cook she was "sick a lot" because her back hurt and she needed rest. Tr. 700. She stated that her back pain improved about eighteen months after her surgery, but that the pain subsequently increased. Tr. 705-06. Plaintiff testified that she could not walk or get out of bed without morphine treatment, and that without pain medication

her legs become numb. Tr. 704. When asked how long she could sustain activity, plaintiff replied that she could stand and walk for an hour and a half and sit for fifteen minutes, but that she could not bend, squat, or climb stairs. Tr. 706-07. She also stated that her right hand and wrist pain returned after her carpal tunnel surgery, and that her right hand is frequently numb, causing her to drop objects she is handling. Tr. 707. The ALJ found plaintiff's subjective complaints and their affect on her ability to work "not entirely credible in light of the information in the medical reports and elsewhere in the record." Tr. 25. Thus, the ALJ rejected plaintiff's testimony that she could not sit more than twenty minutes before experiencing back pain, and that she could sustain activity for no more than an hour and a half. Tr. 706.

Once the claimant has shown an underlying impairment supported by objective medical evidence, the ALJ may not reject the alleged severity of the symptoms without specific findings stating clear and convincing reasons for doing so. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996); *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986). In making such findings, the ALJ may not simply recite regulatory credibility requirements. SSR 96-7p *2. Rather, the ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

In determining credibility, the ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id*.

The ALJ largely based his credibility finding on purported discrepancies between plaintiff's symptoms and the objective medical evidence of record. Tr. 25, 30. However, it is well-established in the Ninth Circuit that an ALJ cannot reject a claimant's subjective pain testimony because the objective medical evidence does not support the severity of the symptoms alleged. *See Smolen*, 80 F.3d at 1282; *Cotton,* 799 F.2d at 1404. Rather, the ALJ must provide clear and convincing reasons for rejecting a claimant's testimony. In this case, the ALJ failed to do so.

For example, the ALJ cited a September 1998 examination performed by Dr. Donovan, an orthopedic physician. Dr. Donovan noted a somatic focus and suspected plaintiff was "projecting less than full effort." Tr. 233. However, despite Dr. Donovan's suspicion, she ultimately found that plaintiff was limited by her back and knee pain. Tr. 235. Additionally, Dr. Donovan's examining report was submitted in September 1998, prior to plaintiff's October 1999 laminectomy. Tr. 25, 233, 465.

Similarly, the ALJ cited a physician's "essentially negative finding" during a 1999 office visit to support his credibility finding. Tr. 25. However, this physician considered his examination inconclusive and subsequently diagnosed plaintiff with a herniated disc and referred her for surgery, which was performed eight weeks later. Tr. 369, 371, 373, 379, 381.

Next, the ALJ cited plaintiff's reported improvement in her back after surgery in late 1999, noting that a medical care provider stated that plaintiff could begin looking for work in January 2000. Tr. 366. However, the record reflects that plaintiff experienced recurring pain for which she sought medical treatment. Tr. 235, 340, 345, 461.

The ALJ also found that a June 2001 report by Dr. Kreps suggesting "post-laminectomy

syndrome with recurrent redicular pain" was "consistent with some limitations, but not to the point

of disability." Tr. 26. Again, an ALJ cannot rely on the lack of corroborating objective medical

evidence to reject a claimant's complaints regarding the severity of symptoms alleged.

Additionally, the ALJ relied on a notation in the record upon plaintiff's termination of health

insurance with Kaiser Permanente. The notation reflected that plaintiff's pain relief was "pretty

good" and that she was "doing well." Tr. 527-28. Absent further explanation, I do not find that this

notation supports the ALJ's credibility finding when it does not reflect activities or behaviors

inconsistent with plaintiff's complaints.

The ALJ further cited the report of a disability determination services (DDS) interviewer,

who noted that plaintiff "stood up to stretch" during the interview. Tr. 151. The ALJ found that the

lack of further difficulty "seems consistent with the medical reviewed above, and suggests that the

claimants is able to continue activities without an extensive need to rest." Tr. 28. This stray remark

is not inconsistent with plaintiff's complaints and does not constitute a clear and convincing reason

to discount her testimony.

The ALJ also relied on the findings of DDS non-examining internists, who provided

assessments of plaintiff's functional capabilities and determined her complaints were not credible

due to the lack of corroborating medical evidence. Tr. 284-291, 510-19. Although not binding, the

ALJ has a duty to consider and specifically address DDS findings. SSR 96-7p *8. Here, no evidence

suggests that plaintiff's treating physicians questioned her reports of pain, suggested malingering,

or found her pain inconsistent with clinical observations and findings. Tr. 293-341, 373, 381.

*Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (a treating physician's testimony generally is

given more weight than that of an evaluating or reviewing physician).

Aside from constituting legal error, the ALJ's findings fail to consider consistent clinical evidence in the record of reproducible back and knee pain. Tr. 373, 374, 379. Plaintiff's documented impairments include surgical repairs to her right knee, degenerative spinal disc disease, post-laminectomy syndrome, bilateral carpal tunnel syndrome, and severe allergies. Objective medical evidence documents and supports each of these complaints, including numerous bone scans, a surgical report, observations of treating physicians and an extensive pain management protocol.. Tr. 239-341, 352, 364, 368, 373-74, 404-6, 410-12, 439, 448-50, 460, 465, 471. Thus, I find that the ALJ erred in finding that plaintiff's subjective complaints were inconsistent with and not supported by the medical record. If the ALJ bases his credibility finding upon a review of the medical record, it must be a complete review. *See Bunnell v. Sullivan*, 912 F.2d 1149, 1152 (9th Cir. 1990); *see also Magallanes*, 881 F.2d at 750.

Finally, the ALJ referenced plaintiff's "chaotic living arrangements" and found that plaintiff's ability to intermittently complete household tasks "do[es] not suggest an impairment that would prevent work." Tr. 28. However, completion of daily living activities does not equal effort required for full employment; an applicant need not "vegetate in a dark room," in order to be unable to work. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). The ALJ also noted that plaintiff was able to care for "her kids." Tr. 28. This is incorrect; plaintiff does not have children and only attempted caring for a friend's children in exchange for housing. Tr. 206. Ultimately, this attempt failed and plaintiff was admitted to the emergency room in June 2003 following abusive actions by these children. Tr. 206, 525-26.

10 - OPINION AND ORDER

For these reasons, the ALJ's findings are not sufficiently specific, clear or convincing for this court to conclude that he did not arbitrarily reject plaintiff's testimony. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993), *see also Orteza*, 50 F.3d at 750.   Accordingly, the ALJ's credibility finding is not supported by substantial evidence in the record.

## C.   Medical Source Statements

Plaintiff contends the ALJ improperly evaluated the medical evidence regarding her physical and mental impairments.    Specifically, plaintiff argues that the ALJ erred in failing to find a medically determinable pain disorder (as diagnosed by Drs. Hennings and Gordon) and by rejecting the opinions and conclusions of Drs. Donovan and Baumbaugh.

If a treating or examining physician's opinion is uncontradicted, the ALJ must provide "clear and convincing" reasons to reject the physician's opinion supported by substantial evidence in the record. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).  If contradicted, the ALJ must provide "specific and legitimate" reasons for rejecting a treating or examining physician's opinion. *Id.; Lester v. Chater*, 81 F.3d 821, 830 (9th  Cir. 1995).

In July 2001, Dr. Hennings examined plaintiff and rendered a diagnosis of pain disorder and an unspecified depressive disorder.  Tr. 257.   He also speculated that plaintiff may have sustained traumatic brain injuries in the context of domestic violence and numerous motor vehicle accidents. Dr. Hennings' diagnosis of pain disorder was based upon psychometric testing, which "revealed elevations on the Somotization with endorsement in times on all three subscales:   neurological symptoms, somatization, and general health concerns." Tr. 256.   Notably, Dr. Hennings' psychometric testing revealed a "valid" profile, which suggested somatic tendencies but did not show

misleading, malingering or factitious behavior. Tr. 256. Dr. Hennings opined that plaintiff's current global assessment of functioning (GAF) equaled 60. Tr. 257.

In December 2001, another psychologist, Dr. Gordon, conducted a second evaluative examination. Dr. Gordon's diagnosed plaintiff with a recurrent major depressive disorder, mild post-traumatic stress disorder, and a "rule-out" diagnosis of a pain disorder. Tr. 264. Dr. Gordon found that plaintiff functioned at a "low average to borderline" intelligence range and that her current GAF equaled 46. Tr. 264. At the same time, Dr. Gordon opined that plaintiff's mental limitations "may be related to her significant level of depression," and that her "depression seems to be interfering with her life in a wide variety of ways." Tr. 264.

The ALJ gave greater weight to Dr. Hennings' profile, finding that Dr. Gordon's analysis was based upon plaintiff's subjective complaints - which the ALJ found not credible - rather than objective testing. Tr. 26. Because the ALJ improperly rejected plaintiff's subjective complaints, this reason for rejecting Dr. Gordon's opinion is not supported by the record. *See Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). Further, the ALJ accepted Dr. Hennings' diagnosis of depressive order as a severe impairment but failed to articulate why he rejected Dr. Hennings' diagnosis of pain disorder. Tr. 26, 29. Therefore, the ALJ erred by failing to address plaintiff's pain disorder diagnoses and any resulting limitations.

On September 9, 1998, Dr. Donovan examined plaintiff and provided an assessment of plaintiff's functional capabilities. Although Dr. Donovan noted a somatic focus and suspected that plaintiff was "projecting less than full effort," Dr. Donovan opined that plaintiff was limited by back and knee pain, and that she could perform sedentary work, initially four hours per day. Tr. 233, 235.

The ALJ rejected Dr. Donovan's opinion regarding plaintiff's functional limitations, The ALJ rejected this assessment, finding it inconsistent with Dr. Donovan's "minor observations on examination" and based on plaintiff's subjective complaints. Tr. 25.

In November 2003, an examining physician, Dr. Baumbaugh, also assessed plaintiff's functional capabilities. Dr. Baumbaugh opined that plaintiff would be unable to work if her subjective complaints are credited, noting that the severity of the pain experienced by plaintiff was consistent with his findings and plaintiff's medical history. Tr. 661. Based on his objective findings, Dr. Baumbaugh concluded that plaintiff was capable of performing sedentary work for up to five hours in a given day. Tr. 661. The ALJ gave Dr. Baumbaugh's report some weight but did not adopt Dr. Baumbaugh's findings because the ALJ found them unclear. Tr. 27. Instead, the ALJ adopted the findings of DDS non-examining physicians, who reviewed plaintiff's medical record in 1999, 2001, and 2002 and opined that plaintiff could perform light work with occasional postural movements and no climbing of ropes, ladders, or scaffolds. Tr. 28, 210-17, 284-88, 510-15.

I find that the ALJ failed to provide specific and legitimate reasons to reject the opinions of Drs. Donovan and Baumbaugh. Despite Dr. Donovan's statement regarding plaintiff's efforts, she ultimately found that plaintiff was limited by her back and knee pain and could perform sedentary work initially on a part-time basis. Further, the record reflects that plaintiff's back pain worsened after Dr. Donovan's evaluation, leading to back surgery. Tr. 465.

With respect to Dr. Baumbaugh, the ALJ found his conclusions unclear regarding plaintiff's ability to sit and stand. However, Dr. Baumbaugh opined that plaintiff could stand for two hours "total" in a given day and sit for two or three hours "total" with postural changes. Tr. 661, 664-65.

13 - OPINION AND ORDER

Therefore, the ALJ failed to provide specific and legitimate reasons for rejecting the findings and conclusions of Dr. Baumbaugh.

## D. Lay Witness Testimony

Finally, plaintiff argues that the ALJ improperly rejected the testimony of plaintiff's ex-boyfriend, Perry Honts, regarding plaintiff's pain and restricted daily activities. Tr. 715-21. Honts testified that plaintiff's back problems began when she fell out of a barn in June or July 1998. Tr. 717. Honts also stated that plaintiff's gait is slow, that she requires rest after walking, and that she has difficulty using stairs. Tr. 717-18. Finally, Honts corroborated plaintiff's testimony that her hands become numb, causing her to drop objects, and that she must sit to complete household chores. Tr. 718-19.

The ALJ did not reject Honts' testimony outright, stating, "This testimony is considered, but it is not consistent with the medical findings." Tr. 28. The ALJ may reject lay testimony that is inconsistent the medical record. *Lewis v. Apfel,* 236 F.3d 503, 512 (9th Cir. 2001). However, Honts' observations that plaintiff's gait is slowed due to knee and back pain and her hands become numb are consistent with the medical record and treatment notes provided by medical sources. Tr. 368, 373, 374, 449, 450, 460. Therefore, the ALJ's rejection of Honts' testimony is not supported by substantial evidence of record.

Finally, plaintiff argues that the ALJ erred by failing to acknowledge written testimony from Brenda McGhee. McGhee wrote that plaintiff is able to walk three blocks "but trips easily," and that plaintiff does some household chores with assistance. Tr. 102, 105. McGhee's testimony is consistent with the medical evidence and testimony established above, and the ALJ erred in failing

to consider it. <u>See</u> 20 C.F.R. §§ 416.913(d)(4); 416.945(a)(3); *Lewis*, 236 F.3d at 511.

## REMAND

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings, or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989).

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman,* 211 F.3d at 1178 (quoting *Smolen,* 80 F.3d at 1292). The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Dodrill*, 12 F.3d at 919); *Nguyen v. Chater*, 100 F.3d 1462, 1466-67 (9th Cir. 1996); *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991). Here, I find that all three factors are met.

In determining plaintiff's RFC, the ALJ relied in part upon his negative credibility determination. Tr. 30. As explained above, the ALJ erred in finding plaintiff not credible. *See Smolen,* 80 F.3d at 1284. Moreover, none of plaintiff's treating physicians questioned her credibility

15 - OPINION AND ORDER

or suggested malingering.  Further, Dr. Baumbaugh reported that "[the] severity of the pain experienced is consisted with the findings and her history," and the record contains corroborating testimony regarding the severity of plaintiff's symptoms. Tr. 102-05, 661, 715-21.

According to plaintiff, she can sit no more than twenty minutes before experiencing back and leg pain and can performed sustained activity for no longer than an hour and a half. Tr. 706. At the administrative hearing, the VE testified that frequent absences due to pain and required rest would preclude competitive employment.  Tr. 732.  Further, Dr. Baumbaugh opined that, based on his clinical findings, plaintiff would be limited to less than a full work day, and that plaintiff would be unable to perform any work activity if her subjective complaints were accepted as true.  Tr. 661. Because there are sufficient findings to establish disability if the improperly rejected evidence is credited as true, remand for an award of benefits is appropriate.

## Conclusion

For these reasons, the ALJ's finding that plaintiff is not disabled under the Act is not supported by substantial evidence in the record.  Accordingly, the decision of the Commissioner is REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for calculation and award of DIB and SSI benefits.

IT IS SO ORDERED.

DATED this *28* day of April, 2006.

_____
Ann Aiken
United States District Judge

16 - OPINION AND ORDER